**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

**MARY MILANO,**

*Plaintiff,*

v.

**WORLD RELIEF CORPORATION OF THE NATIONAL ASSOCIATION OF EVANGELICALS,**
**7 East Baltimore Street**
**Baltimore, MD 21202,**

**Serve Registered Agent:**

**National Registered Agents, Inc. of MD,**
**2405 York Road, Suite 201**
**Lutherville Timonium, MD 21093,**

*Defendant.*

**Civ. No. 1:21-cv-2744**

**JURY TRIAL DEMANDED**

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Mary Milano brings this lawsuit against Defendant World Relief Corporation of the National Association of Evangelicals ("World Relief") for violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("The Equal Pay Act").

## PARTIES

1. Milano is a citizen of the United States and is domiciled in Maryland.

2. World Relief is a Delaware corporation with its headquarters in Baltimore, MD.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the Equal Pay Act.

4. This Court has personal jurisdiction over Defendant because Defendant transacts regular business and has regular contacts in Maryland.

5. Venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and this division.

## FACTUAL ALLEGATIONS

6. World Relief hired Milano in or about October 2017 as its Director of Content. Milano reported directly to Joy Crook and James Misner, the Senior Vice President of Strategic Engagement, was her second-level supervisor.

7. At all times during her employment, Milano worked out of World Relief's headquarters in Baltimore, MD.

8. In or about 2019, Milano began reporting directly to Misner.

9. In or about 2019, Milano discovered in a conversation with her colleagues around this time that World Relief was paying her $10,000 less per year than her similarly situated and comparably qualified male colleague, Nate Riedy.

10. Riedy's and Milano's positions were substantially similar. Riedy wrote fundraising copy for mid-level donors, and Milano wrote fundraising copy for major donors. Milano and Riedy had similar work experience, but Milano's fundraising brought in more money.

11. Milano also discovered in or about April 2019 that World Relief was paying her $2,500 less per year than her similarly situated and comparably qualified male colleague, Tim Huber, who had a lesser title and who was on a performance improvement plan at the time.

12. Milano learned that HR Director Karen Gonzalez presented a spreadsheet of department salaries to World Relief's President and Chief Executive Officer to demonstrate the gender pay disparity in Misner's department in an attempt to remedy the gender pay disparity situation. In response, World Relief's leadership did not allow Misner to raise any male employee's salary until the female employees in his department were brought up to parity in an attempt to remedy the gender pay disparity situation.

13. In or about April 2019, World Relief's CEO, Tim Breene, assured Milano that Misner was receiving coaching related to his mistreatment of female employees at Work Relief.

14. In or around October 2019, World relief offered Milano the opportunity to transfer to the Marketing Department where she would report a different supervisor. Shortly after her transfer to the Marketing Department, World Relief increased Milano's salary. Milano's last inequitable paycheck was in November 2019.

15. Upon transferring departments, World Relief removed Milano from meetings she had previously attended with Misner; this adversely impacted her ability to perform her job duties.

16. The Marketing Department at World Relief is an all-female department. At one point, World Relief's vice president of marketing, Megan Ashley, reported to Milano that the department was an "island of misfit toys for women who did not want to work for Misner."

17. In June 2020, Milano's direct supervisor, Francesca Albano, had emergency surgery. Milano circulated a prayer to the Marketing Department, addressing the prayer to "Mother God."

18. Misner called Milano to discuss this prayer and questioned her personal theology. He contacted Milano again a few days later and declared that "white Evangelical women (like Milano) are the group of people most opposed to racial justice." Ashley then complained about this interaction to World Relief's human resources department.

19. In or about early 2021, World Relief again required Misner to undergo coaching to improve his relationship with his female subordinates. This coaching was performed by Breene's wife.

20. In or about April 2021, World Relief announced that Misner was elected to serve as director of a new department that would combine several existing departments, including Marketing. However, this required that Misner would again be in Milano's supervisory chain.

21. Milano complained to Gonzalez about this development, but Gonzalez reported that there was nothing she, World Relief's General Counsel, or World Relief's Chief Administrative Officer could do to stop it. Gonzalez then declared that Misner has a "heart issue with women" that "no amount of coaching can fix."

22. On or about May 29, 2021, Milano filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Baltimore Community Relations Commission alleging violations of the Equal Pay Act of 1963.

23. Shortly after Milano filed this Charge, World Relief paused the merger to investigate. Two female members of the Board of Directors interviewed Milano.

24. On or about September 29, 2021, Ashley conducted Milano's annual performance review. During this review, Ashley stated she had spoken with Myal Greene, president and CEO, about Milano's ability to advance within World Relief for fundraising. Ashley reported that Greene confirmed Milano does not have the ability to move up within fundraising because of Misner.

25. On or about October 8, 2021, Greene announced that the merger was deemed "ill-advised" for the time being, but it may be reconsidered and possible implemented in the future.

26. As a result of World Relief's illegal actions, Milano has sustained economic damages and mental anguish, and she will continue to sustain damages into the foreseeable future.

**COUNT I**
**Discrimination in Violation of**
**The Equal Pay Act of 1963 ("EPA")**

27. Milano hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

28. Milano is an "employee" as defined by 29 U.S.C. § 206.

29. World Relief is an "employer" as defined by 29 U.S.C. § 206.

30. Milano is female and is a member of the protected class that employers are prohibited from discriminating against on the basis of sex regarding wage payment according to 29 U.S.C. § 206(d).

31. World Relief violated the EPA when it knowingly paid male employees more than it paid Milano for equivalent work, including male employees such as Tim Huber who had lesser titles.

32. World Relief violated the EPA when it paid Milano less money than Nate Riedy, who had similar experience to Milano and brought in less money to the organization.

33. World Relief's stated reasons for paying Milano less than men are false and are pretext for unlawful discrimination.

34. Milano has sustained damages as the result of Defendant's illegal discrimination in violation of the Equal Pay Act and is entitled to such legal or equitable relief as will effectuate the purposes of EPA, including but not limited to unpaid wages and liquidated damages, and reasonable costs and attorneys' fees.

**PRAYER FOR RELIEF**

Based on the foregoing, Milano respectfully requests that she be awarded the following relief:

a. Judgment against Defendant in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Milano, including economic damages, liquidated damages, compensatory and punitive damages to be determined at trial;

b. Re-employment, reinstatement, promotion, front pay, or other equitable relief;

c. Pre-judgment interest;

d. Interest due on unpaid wages;

e. A reasonable attorney's fee and costs of this litigation;

f. Injunctive and declaratory relief;

g. Punitive damages; and

h. Reasonable expert witness fees;

i. Any other relief that this Honorable Court deems just and proper to award.

**JURY DEMAND**

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted,

___*/s/ R. Scott Oswald*________________

R. Scott Oswald, Esq.
Anita Mazumdar Chambers, Esq. (*pro hac vice* forthcoming)
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, D.C. 20006-5345
(202) 261-2821 (telephone)
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com
*Counsel for Plaintiff*